IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THORNE K. HURT,                          *
 # 366-732,
                    Petitioner           *

v.                                       *          Civil Action No. DKC-13-1331

KATHLEEN GREEN, et al.,                  *
                    Respondents
                                        ***

## MEMORANDUM OPINION

On May 6, 2013,[1] the court received the instant 28 U.S.C. § 2254 habeas corpus application filed by Petitioner Thorne K. Hurt attacking his 2010 judgment of conviction for possession of heroin with intent to distribute.  ECF No. 1.  Respondents filed a limited answer with exhibits, addressing only the issue of exhaustion.  ECF No. 9.  In response to the court's Order staying proceedings to permit Petitioner to complete the appeal then pending in the state appellate court, ECF No. 10, Petitioner filed a case update.  ECF No. 13.  Respondents filed a second answer, ECF No. 16, to which Petitioner filed a reply.  ECF No. 19.  After reviewing the filings, the court finds no need for an evidentiary hearing.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2014); *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)).  For the reasons set forth herein, the court shall dismiss the Petition and deny a certificate of appealability.

---

[1] The Petition is undated.

### Factual and Procedural History[2]

On December 10, 2010, after pleading guilty, Petitioner was convicted in the Circuit Court for Wicomico County for possession of heroin with intent to distribute.  ECF No. 1, p. 1.[3] He was sentenced to 14 years imprisonment and restitution.  ECF No. 9-2, p. 19.  On April 20, 2011,[4] acting *pro se*, he filed an Application for Leave to Appeal to the Court of Special Appeals, which, on May 10, 2011, was stricken as untimely by the Circuit Court.  ECF No. 9-1, pp. 7-8.

Petitioner then filed a *pro se* Motion to Correct Illegal Sentence, ECF No. 9-3, which was denied by the Circuit Court on June 24, 2011.  ECF No. 1, p. 8.  He filed a Notice of Appeal and Application for Leave to Appeal the denial of the Motion to Correct Illegal Sentence on July 7, 2011, and July 26, 2011, respectively.  *Id.*  Petitioner argued that the lower court erred:  1) in holding that the State did not breach the plea agreement by asking the court to impose the entire 14 year sentence of active incarceration; and 2) in failing to recognize that a criminal defendant must be sentenced upon accurate information.  ECF No. 9-4, p. 2.  On September 13, 2013, Petitioner filed a motion in the Court of Special Appeals to withdraw that appeal.  ECF No. 13, p. 3.  The motion was granted, and the appeal dismissed, on May 14, 2014.[5]

On December 27, 2011, Petitioner filed a *pro se* Petition for Post-Conviction Relief in the Circuit Court, ECF No. 9-5, followed by two *pro se* amendments to the petition.  ECF Nos. 9-6,

---

[2]    Petitioner filed a number of motions in the state courts.  The court addresses only those necessary to decide the instant Petition.

[3]    Citation reflects that of the electronic docket.

[4]    The Application was originally filed in the Court of Special Appeals on March 30, 2011.  It was received by the Circuit Court on April 20, 2011.  ECF No. 9-1, p. 7.

[5]    A search of the Maryland Judiciary Case Search Website revealed that Petitioner's motion to withdraw his appeal had been granted on May 14, 2014.  The Court of Special Appeals' Mandate issued on May 15, 2014.  This court takes judicial notice of the dismissal of Petitioner's appeal by the Court of Special Appeals.

9-7.  In the interim, counsel had been appointed to represent Petitioner in the post-conviction proceedings.  ECF No. 9-1, p. 9.  Counsel filed a memorandum clarifying the claims raised in the original petition and amendments thereto, summarizing the issues as:  1) illegal sentence; 2) unknowing and involuntary plea; 3) breached plea agreement; and 4) ineffective assistance of counsel.  ECF No. 9-8.[6]  A hearing was held on April 19, 2012, ECF No. 9-9, p. 1, and the state petition was denied in an Opinion and Order dated May 18, 2012.  *Id.*, p. 8.  On June 1, 2012, Petitioner filed an Application for Leave to Appeal the Denial of Post-Conviction Relief to the Court of Special Appeals, raising two issues:  1) the Circuit Court failed to address the due process claim Petitioner had raised, that he was sentenced based on misinformation; and 2) the lower court erred by using extrinsic evidence, not the record of the plea proceeding, to determine the terms of the plea agreement.  ECF No. 9-10.  The Court of Special Appeals denied the application on April 25, 2013, and its Mandate issued on May 8, 2013.  ECF No. 9-11.

As noted above, the current Petition was filed in this court on May 6, 2013.  ECF No. 1.

## Threshold Considerations

### Exhaustion

Before a petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court.  *See Rose v. Lundy*, 455 U. S. 509, 521 (1982).  This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim.  *See O'Sullivan v.*

---

[6]       Petitioner objects to the inclusion of this document in the record and states that he had not seen it until the State filed its Limited Answer and exhibits.  ECF No. 19, p. 1.  He further states that there is no record of this document, as it is not reflected in the docket entries in his criminal case and was not submitted as an exhibit at the post-conviction hearing.  *Id.*  Petitioner argues that the memorandum "incorrectly clarifies Petitioner's breach of plea claim and omitted the Due Process claim."  *Id.*  He requests that, if the court "uses this undocumented document in the determination of this petition," ECF No. 19, p. 2, that he be allowed to amend the Petition to include a claim of ineffective assistance of post-conviction counsel.  *Id.*

*Boerckel*, 526 U.S. 838 (1999); 28 U.S.C. § 2254(b) and (c).[7]   In Maryland, this may be accomplished by raising certain claims on direct appeal and other claims by way of post-conviction proceedings.   Exhaustion is not required if at the time a federal habeas corpus petition is filed petitioner has no available state remedy.   *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

Procedural Default

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies.   *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U. S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).   A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule."   *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

---

[7]   Regarding exhaustion, § 2254 provides, in relevant part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that- -
> (A) the applicant has exhausted the remedies available in the courts of the State ...
>
> ....
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

As the Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim.  *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Id*. at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[8]  *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620.  "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time."  *Breard,* 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488).  Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice.  *See Schlup v. Delo*, 513 U. S. 298, 314 (1995).

---

[8]        Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief.  *See Murray v. Carrier*, 477 U.S. 478, 496 (1986).  "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."  *Id*.; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003).  Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence.  *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

**Framework for Analysis**

Section 2254

Section 2254 states that a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The statutory framework of the federal habeas statute sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, __U.S. __, 131 S.Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:  (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis pursuant to

2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101  (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). "Rather, that application must be objectively unreasonable."  *Id*.  Thus, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  *Harrington*, 562 U.S. at 101 (quoting *Williams*, 529 U.S. at 410).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts.  *Id*. (internal quotation marks and citation omitted).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e) (1).  "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part."  *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).

*Strickland*

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Representation is deficient if it falls below an objective standard of reasonableness, considering all the circumstances. *Id.* at 688.

To satisfy the first part of this standard, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687. The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 669. A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. A petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 562 U.S. at 109 (internal quotation marks and citations omitted); *see also Sharpe*, 593 F.3d at 383 ("Counsel is not required to engage in the filing of futile motions."). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is

whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

The second prong requires the court to consider whether counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable and that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 690-94. "The benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id*. at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697.

The principles governing ineffectiveness claims apply in federal collateral proceedings as they do on direct appeal or in a motion for new trial. *Id.* at 697. Indeed, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. *Id.*

Moreover, the same principles apply in the context of guilty pleas. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The *Hill* Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58; *see also Padilla v. Kentucky*, 559 U.S. 356, 371 n.12 (2010) ("In *Hill*, the Court recognized—for the first time—that *Strickland* applies to advice respecting a guilty plea.").

The first prong of the *Strickland* test is nothing more than a restatement of the standard of attorney competence stated above. *Hill*, 474 U.S. at 58.

The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 59.  The *Hill* Court reiterated that, as stated in *Strickland*, "these predictions of the outcome at a possible trial, where necessary, should be made objectively ...."  *Id.* at 59-60; *see also Padilla*, 559 U.S. at 372 (noting that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances").

## Analysis

Petitioner presents the following issues for the court's review:  (1) the State breached the plea agreement by (a) failing to remain silent and, instead, asking for the entire 14 year sentence, and (b) stating incorrect guidelines; (2) Petitioner was deprived of his right to due process when he was sentenced based on misinformation; and (3) counsel was ineffective by failing to object to violations of the plea agreement.  ECF No. 1, p. 5.

Respondents, in their Limited Answer, counter that:

Hurt's claim that his sentence is illegal because it was based on false information was raised to the circuit [court] by way of a motion to correct an illegal sentence. After that claim was denied by the Circuit Court, Hurt filed an appeal to the Court of Special Appeals, which remains pending.  Hurt's claim that the State breached the plea agreement is also at issue in the pending appeal of the denial of his motion to correct an illegal sentence.[9]

ECF No. 9, p. 12 (internal citation omitted).   Thus, Respondents argue, "[u]nder the circumstances, Hurt has yet to exhaust his available state remedies with respect to at least one of

---

[9]        *See* n. 5.

the claims being asserted in his underlying petition. ... Therefore, pursuant to *Rose v. Lundy* and its progeny, dismissal is required unless Hurt withdraws the unexhausted claim(s)." *Id.*[10]

I.      Ground One: Breach of Plea Agreement

     A.      14 Year Sentence

There appears to be no dispute that this portion of Petitioner's breach of plea agreement claim is exhausted.  Although Petitioner raised the claim in the motion to correct illegal sentence, ECF No. 9-3, p. 3, he also included it in his state petition for post-conviction relief, ECF No. 9-5, p. 13, and his application for leave to appeal the denial of that petition.  ECF No. 9-10, p. 7. Accordingly, the court turns to the merits of the claim.

     Petitioner argues that:

> Petitioner agreed to a guideline plea that would be capped at the top of the guidelines (7 to 14).  State would remain silent and length of sentence and suspended portion and probation be left to the court.  Posecutor ask[ed] the court to sentence petitioner to whole 14 years of sentence.

ECF No. 1, p. 4.  Respondents answer that there is no evidence that the plea agreement was breached and that the state court's determination "withstands scrutiny under 28 U.S.C. § 2254(d)."  ECF No. 16, p. 13.

     At the December 10, 2010, plea/sentencing hearing, the assistant state's attorney described the plea agreement to the judge:

> The nature of the plea will be presented as follows.  It's my understanding that Mr. Hurt will plead guilty to count three, possession with intent to distribute heroin.  Upon a finding of guilt if the Court was to accept it, the remaining counts would be nol prossed.  The State is asking for the binding portion as a 14 year active cap for active incarceration.  The Court, as far as suspended portion to be left in the discretion of the Court.  Also the length of the period of probation to be left in the discretion of the Court.
>
> There is an order of forfeiture in the amount of $4,000 that the State has prepared and has shown defense counsel that would be submitted.  The Defendant was on

---

[10]      The court will address Respondents' arguments as to the merits of Petitioner's claims *infra*.

parole at the time of the offense.  The Defendant's guidelines, just for the Court's edification, are 12 years to 20 years.

That is the nature of the plea agreement as proposed by the State.

ECF No. 9-2, pp. 2-3.

The Circuit Court, addressing Petitioner's state post-conviction application, found:

> Petitioner alleges that the State breached the plea agreement when the Assistant State's Attorney supposedly agreed to make no recommendation as to sentencing but then asked the Court for a 14-year cap on active incarceration.  The plea agreement ... was that Petitioner would plead guilty to Count Three (Possession with Intent to Distribute Heroin) and the State would then nolle prosequi the remaining charges.  As to sentencing, the State agreed that it would not seek enhanced punishment for possessing a large amount of heroin or for being a subsequent offender and would recommend a sentence within the guidelines.  Petitioner would also forfeit the money seized.  The sentencing guidelines were 12-20 years and the transcript shows that the State requested 14 years of active incarceration.  Furthermore, Judge Davis asked Petitioner if he heard the plea agreement as explained by the prosecutor and his own attorney, and he responded, "Yes, sir."  The Court then asked Petitioner if his attorney's and the prosecutor's explanation of the plea agreement was correct and complete, at which time the Petitioner again responded, "Yes, sir."  Therefore, the State did not breach the plea agreement.

ECF No. 9-9, pp. 5-6 (internal citation omitted).

Bearing in mind the "highly deferential standard for evaluating state court rulings," *Lindh*, 521 U.S. at 333 n.7, the court finds that Petitioner has not met his burden of demonstrating the post-conviction court's decision was "based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d)(2); *see also id.* § 2254(e)(1) ("[A] determination of a factual issue made by a State Court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence."). The post-conviction court had a copy of the plea agreement,[11] as well as a transcript of the December 10, 2010, hearing. ECF No. 9-9, pp. 5-6. The court was aware of the assistant state's attorney's description of the plea agreement. The judge was also aware that neither Petitioner nor his counsel challenged that description and, in fact, answered affirmatively when asked if they agreed with the prosecutor's explanation of the plea agreement.

Where, as here, "the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe*, 593 U.S. at 378. Petitioner has not done so. Even if the plea agreement could reasonably be interpreted in different ways, this court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Wood*, 558 U.S. at 301. In addition, the post-conviction court correctly applied Supreme Court precedent.[12] *See Harrington*, 562 U.S. at 101; *cf. Hill*, 474 U.S. at 55 ("The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.") (internal quotation marks omitted). After questioning Petitioner, the Circuit Court found that his plea was voluntary. ECF No. 9-2, pp. 10-11. Therefore, this court defers to the post-conviction court's conclusion that the State did not breach the plea agreement and, accordingly, Petitioner's first ground for relief fails.

---

[11] Petitioner filed a Motion for Discovery and Expansion of Record in this court to include, among other things, a copy of the plea agreement. ECF No. 18. The court, in an Order dated June 18, 2014, denied the motion without prejudice. ECF No. 25, p. 2. The court noted Petitioner's argument that "examination of the actual plea agreement and other documents not provided by Respondents may support his grounds for habeas corpus relief." *Id.* The court stated that if it subsequently found a need for expansion of the record, it would initiate an appropriate order. *Id.* The court finds no need to expand the record.

[12] Both parties cite *Santobello v. New York*, 404 U.S. 257, 262 (1971), essentially for the same proposition. *See* ECF No. 16, p. 12 (noting *Santobello's* holding that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled); ECF No. 19, p. 3 ("The *Santobello* Court also held that 'Defendant was entitled to relief regardless of whether the breach of the agreement was inadvertent or whether the sentencing judge was influenced by the Prosecutor's recommendation.") (quoting *Santobello*). Of course, the parties differ regarding whether the "promise" was breached.

B.  Incorrect Guidelines

In review of this claim, the court first addresses the exhaustion issue.  Petitioner's allegation that the State breached the plea agreement by stating incorrect sentencing guidelines was raised in his motion to correct illegal sentence, ECF No. 9-3, p. 4, which the Circuit Court denied.  Petitioner appealed that denial, ECF No. 9-4, which was still pending when he filed this Petition.  Petitioner subsequently filed a motion to withdraw the appeal, ECF No. 13, and, as previously noted, the Court of Special Appeals granted the motion and dismissed the appeal.

On August 19, 2013, this court issued an order staying proceedings "to permit Petitioner to complete the appeal now pending in the Court of Special Appeals."  ECF No. 10, p. 2.  The court noted that Respondents had asked that the Petition be dismissed for nonexhaustion, unless Petitioner chose to withdraw the unexhausted ground(s) for relief.  *Id.*; *see also* ECF No. 9, p. 12. However, the court found that issuing a stay was a more reasonable alternative.  ECF No. 10, p. 2.[13]  The stay was lifted after Petitioner represented to the court that he was withdrawing the pending appeal.  ECF No. 15; *see also* ECF No. 13.

As a result, the claim remains unexhausted.[14]  Moreover, because Petitioner has not "fairly presented" the claim to the state courts by failing to complete and, instead, withdrawing his appeal of the unexhausted issue, he has procedurally defaulted his claim that the state breached the plea agreement by stating incorrect guidelines.  *See O'Sullivan v. Boerckel*, 526.S.

---

[13]     The court's focus in issuing the stay was Petitioner's claim that his sentence is illegal because it was based on false information.  ECF No. 10, pp. 1-2.  However, as noted above, Petitioner's "claim that the State breached the plea agreement is also at issue in the pending appeal of the denial of his motion to correct an illegal sentence."  ECF No. 9, p. 12.

[14]     With regard to Petitioner's state post-conviction proceedings, the only document in which Petitioner raised the allegedly incorrect guidelines as an independent breach of plea agreement ground was his *pro se* memorandum in support of closing arguments.  ECF Nos. 9-7, 11-1.  Petitioner did not raise the incorrect guidelines issue separately in his petition for post-conviction relief, ECF No. 5, the amendments to the petition, ECF Nos. 9-6, 9-7, or his appeal of the denial of the post-conviction petition, ECF No. 9-10, although it is referenced as part of his due process claim in those documents.

838, 845 (1999) (concluding that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). Ordinarily, then, the court would not address the merits of Petitioner's second ground for relief unless he can demonstrate both cause for the procedural default and prejudice resulting from the failure to consider the claim on the merits, or that failure to consider the merits of the claim would result in a "fundamental miscarriage of justice."[15]

Clearly Petitioner cannot show cause for the procedural default "external to the defense," *Breard*, 134 F.3d at 620, as he was the one who filed the motion to withdraw the appeal. ECF No. 13.[16] Therefore, the court need not address the prejudice prong. *Breard*, 134 F.3d at 620. As for demonstrating that a "fundamental miscarriage of justice" has occurred, Petitioner admitted his guilt at the plea/sentencing hearing. ECF No. 9-2, p. 10. He cannot, and has not, claimed that he is "actually innocent" of the crime. Nor can he claim that his sentence would necessarily have been different. *See id.*, p. 2. Any attempt to do so would be pure speculation. Accordingly, the court finds that Petitioner has not demonstrated cause and prejudice or a fundamental miscarriage of justice to entitle him to relief from the procedural default of his inaccurate guidelines claim.

---

[15] The court notes that Petitioner has not attempted to argue cause and prejudice or that a fundamental miscarriage of justice would occur if the court declines to consider the claim on the merits. He argues that the claim has been exhausted and has not been procedurally defaulted. ECF No. 19.

[16] Had Petitioner allowed the state court proceedings to go forward, as contemplated by the court when it issued the stay order (even extending, if necessary, "until Petitioner completes any necessary review by seeking to appeal by seeking leave to appeal to the Court of Appeals with regard to his motion to correct an illegal sentence," ECF No. 10, p. 3), the claim would not have been procedurally defaulted. Now, however, there is no available remedy for him to present the claim, as the time for direct appeal has long passed and, under Maryland law, he may only bring one application for post-conviction relief in the state courts, as Respondents correctly note. ECF No. 9, pp. 10-11 (citing Md. Rule 8-204; 1995 Md. Laws, Ch. 10 (amending Article 27, Section 645A of the Maryland Code)). Moreover, when Petitioner attempted to file a pro se motion for sentence modification and/or reduction of sentence in April, 2015, the sentencing judge noted that the court generally has no authority to modify a sentence unless the request is made within 90 days of imposition of sentence. *See Criminal Docket* in No. 22-K-10-000681.

Nonetheless, even if the claim had not been procedurally defaulted, it would fail on the merits. *See* 28 U.S.C. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Although not presented with this aspect of Petitioner's breach of the plea agreement claim, the post-conviction court's reasoning with respect to the first portion of the claim is equally applicable here.

As part of her description of the plea agreement, the prosecutor stated that Petitioner's guidelines were "12 to 20 years." ECF No. 9-2, p. 2. The sentence imposed, 14 years incarceration, was within those guidelines. Defense counsel acknowledged that "the 14 [was] still within the plea offer," *id.*, p. 3, as Petitioner claims to have understood it. Counsel subsequently stated that "either way that you do the guidelines ... the number 14 is still within those guidelines." *Id.*, p. 17. As quoted previously, the post-conviction court found:

> The sentencing guidelines were 12-20 years and the transcript shows that the State requested 14 years of active incarceration. Furthermore, Judge Davis asked Petitioner if he heard the plea agreement as explained by the prosecutor and his own attorney, and he responded, "Yes, sir." The Court then asked Petitioner if his attorney's and the prosecutor's explanation of the plea agreement was correct and complete, at which time the Petitioner again responded, "Yes, sir." Therefore, the State did not breach the plea agreement.

ECF No. 9-9, pp. 5-6. Neither Petitioner nor his counsel objected to the prosecution's statement of the applicable guidelines.

As Respondents did not breach the plea agreement by recommending a sentence of 14 years, so, too, Respondents did not breach the plea agreement by stating Petitioner's guidelines incorrectly. Therefore, Petitioner's second ground for relief also fails.

II.     Ground Two: Due Process Violation

The court again begins with the exhaustion issue.

Petitioner argues that his due process claim (that his right to due process was violated when he was sentenced based on inaccurate information) is exhausted.   ECF No. 13. Respondents dispute this contention, stating that the claim is either unexhausted or procedurally defaulted.  ECF No. 16, p. 13.  An examination of the chronology of this claim is in order.

Petitioner first raised this ground for relief, albeit phrased differently, in his motion to correct illegal sentence.  According to Petitioner's memorandum in support of that motion, the state presented false information, specifically an alleged parole violation based on a trespass charge, which changed his sentencing guidelines.  ECF No. 9-3, p. 4.  Petitioner denies that there was a violation and contends that the allegedly false information was prejudicial to the sentencing hearing.  *Id.*

As noted previously, the motion was denied, and Petitioner appealed the denial to the Court of Special Appeals.  ECF No. 9-4.  Petitioner presented the claim much as he does in his Petition before this court:  "Did the lower court err when failing to recognize that a criminal defendant must be sentenced upon accurate information?"  *Id.*, p. 5.  On August 19, 2013, this court stayed proceedings pending completion of the appeals process in the state courts.  ECF No. 10.  The court stated that Petitioner's claim that he was sentenced based on false information "is intrinsic to Petitioner's case ...."  *Id.*, p. 2.  The stay was lifted after Petitioner represented to the court that he had withdrawn the appeal.  ECF No. 15; *see also* ECF No. 13.  The Court of Special Appeals granted Petitioner's motion to withdraw the appeal and dismissed the appeal on May 14, 2014.

Petitioner contends here that the due process claim was also contained in his state application for post-conviction relief.  ECF No. 1, p. 3.  According to Petitioner, in response to the stay order, he "presented the Court with proof that claim of false information was part of post-conviction petition and has been exhausted."  ECF No. 13, p. 1.  The "proof" to which Petitioner is referring is apparently his Motion for Reconsideration of Court's Order and Petitioner's Reply to Respondents.  ECF No. 11.  In brief, Petitioner states that he included the claim in his motion to correct illegal sentence and appeal of the denial thereof, but was subsequently informed that "this was <u>not</u> the proper venue in which to file this issue."  *Id*., p. 1. Petitioner continues that he "filed for a post-conviction and an amendment to the post-conviction dedicated to the issue of Petitioner being deprived of his right to Due Process when he was sentenced upon misinformation," *id.*, pp. 1-2, and further argued the issue in a *pro se* memorandum in support of closing arguments.  *Id.*, p.2; *see also* ECF No. 11-1.

The claim was not included in Petitioner's initial *pro se* post-conviction petition, ECF No. 9-5, nor was it included in his first *pro se* amendment to that petition.  ECF No. 9-6.  In his second *pro se* amendment to the post-conviction petition, Petitioner stated that he "was deprived of his right to due process, when the prosecutor presented misinformation of petitioner's prior record, at his plea hearing."  ECF No. 9-7, p. 1.  Petitioner filed this document *pro se* as well; however, by that point counsel had been appointed for him.  ECF No. 9-1, p. 9.

Counsel did not include this claim in her memorandum clarifying Petitioner's claims apparently submitted before the post-conviction hearing.[17]  ECF No. 9-8.  Thus, "as ultimately litigated and construed,"  ECF No. 9, p. 6; ECF No. 16, pp. 7-8, the hearing addressed the following allegations:  1) the plea court illegally entered a $4,000 forfeiture as part of his

---

[17]        *See* n.6.

judgment; 2) Petitioner's guilty plea was defective because it was not knowing; 3) the State breached the plea agreement by not remaining silent at sentencing; and 4) plea counsel was ineffective for, among other things, failing to make appropriate objections at sentencing.[18] ECF No. 9, p. 7; ECF No. 9-9.

In the opinion and order denying the petition for post-conviction relief, the Circuit Court did not address the due process claim. ECF No. 9-9. Indeed, that failure was one of the two grounds raised in Petitioner's application for leave to appeal the denial of the Circuit Court's denial of his petition. ECF No. 9-10, p. 3.

In their Limited Answer, Respondents sought dismissal of the Petition based on Petitioner's failure to exhaust his state court remedies, based on the then-pending appeal of the motion to correct illegal sentence, "unless Hurt withdraws his unexhausted claim." ECF No. 9, p. 1. After the stay was lifted, Respondents filed their answer to the Petition, ECF No. 16, stating that:

> Notwithstanding Hurt's claims to the contrary, this claim was not pursued in state post-conviction proceedings at the circuit court level. *See* Paper No. 9-8 (counseled Memorandum to clarify the claims contained in Petitioner's pro se Petition for Post-Conviction Relief and pro se Amendments thereto); Paper No. 9-9 (post-conviction court's opinion).

ECF No. 16, p. 13.

As already noted, Petitioner alleges that he had not seen counsel's pre-hearing memorandum until he received Respondents' Limited Answer and the attached exhibits.[19] Presumably, had he read the memorandum, he would, at least, have discussed counsel's "clarification" of his claims with her. *See* ECF No. 19, p. 1 (noting that the memorandum

---

[18] The other ineffective assistance claims raised at the state level are unrelated to the Petition before this court.

[19] The court need not rely on this document, however, as it is clear from the Circuit Court's opinion and order, ECF No. 9-9, what issues were addressed at the post-conviction hearing.

"incorrectly clarifies Petitioner's breach of plea claim and omitted the Due Process claim").  The court is inclined to give Petitioner the benefit of the doubt as to whether he saw counsel's memorandum.  The court observes, however, that Petitioner could have ensured that his due process claim was exhausted by allowing the appeal of the denial of his motion to correct illegal sentence to proceed.  In any event, the court need not resolve the issue of whether Petitioner's due process claim was properly included in his state post-conviction application, because the claim fails on the merits.

Petitioner alleges that he was "deprived of his right to due process when sentenced upon misinformation."  ECF No. 1, p. 3.  The misinformation in question is the alleged parole violation, the trespass charge, which he claims increased his sentencing guidelines.  ECF No. 9-7, pp. 4, 7; ECF No. 11-1, p. 8.

The violation issue was discussed during the plea/sentencing hearing.  After hearing the assistant state's attorney's description of the plea agreement, the court asked defense counsel if that was her understanding as well:

> MS. HARVEY:  Your honor, yes.  Well, we're free to ask for less than the 14 years, and we will be.  There is a question about, I've looked at the NCIC report and I've shown it to Mr. Hurt.  There's a question about one entry for a trespass where it says violation and he believes he didn't do a VOP or wasn't violated, so it's unclear.  He wants to go forward today.  That would change his guidelines to 7 to 14 years,[20] but the 14 is still within the plea offer.  So we would just ask for a little more consideration, that there's a question about that. The State doesn't agree but I've told him I would raise the issue.

> THE COURT:  Okay.

> MS. HARVEY:  The State understands why we're raising it.

ECF No. 9-2, p. 3.  In describing Petitioner's prior criminal history, the prosecutor noted that Petitioner "has a 1987 criminal trespass which the State believes he violated."  *Id.*, p. 16.  The

---

[20]     It appears that Ms. Harvey misspoke and meant to cite the changed guidelines as 12 to 20 years, as the prosecution had already indicated.  ECF No. 9-2, p. 2.

prosecution also reiterated that the 14 year sentence it was recommending was within the guidelines. *Id.* Defense counsel stated: "Your honor, either way that you do the guidelines, whether you consider the language of violation and that trespass with the violation, or if you think it may not be, the number 14 is still within the guidelines." *Id.*, p. 17. She added that "[w]e would certainly appreciate the Court considering giving him below the 14 years." *Id.*

Petitioner continues to deny that there was a violation. ECF No. 19, p. 4. He states in the Petition that "The VOP the state claimed occurred in New York. Petitioner has provided a copy of his New York DCJS record to lower court and court of appeals. Record review of trespass sentence was time served. Date of arrest 10/17/87. Date of disposition 10/23/85, [21] 5 days later." ECF No. 1, p. 4.

The alleged violation was included by the prosecution in detailing Petitioner's prior criminal record, which included a total of 8 offenses. ECF No. 9-2, pp. 15-16. The assistant state's attorney noted the "1987 trespass which the State believes he violated." *Id.*, p. 16. Defense counsel contested the alleged violation. *Id.*, pp. 3, 17. Although the guideline range was stated at the hearing as 12-20 years, the judge recognized that he could sentence Petitioner to less than the 14 year sentence of active imprisonment recommended by the prosecution, *id.*, p. 4, as defense counsel, in fact, asked him to do. *Id.*, p. 3, 17.

It is impossible to know what—if any—effect the alleged violation had on the judge's ultimate decision to sentence Petitioner to 14 years. It is clear to the court, however, that Petitioner's due process rights were not violated. Although the guideline range changed, the judge was not presented with misinformation. That is, there was no definitive statement made that Petitioner <u>had</u> violated his parole based on the trespass charge, just that the State <u>believed</u> he

---

[21]   Petitioner inadvertently indicated the wrong year. It is clear from the Petition and hearing transcript that the correct year is 1987.

21

had.  Defense counsel put forth Petitioner's position that there had been no violation.  The judge knew that he was not bound by the prosecution's recommended sentence of 14 years active incarceration (except in terms of the fact that the plea agreement capped the term of active incarceration which could be imposed at 14 years).  Petitioner indicated his understanding of the plea agreement as presented in court.  Defense counsel asked for a sentence of less than 14 years.  The fact that Petitioner did not receive a lower sentence does not mean that the judge was misinformed.

The court finds no violation of Petitioner's due process rights during the plea/sentencing hearing.  Therefore, Petitioner's second ground for relief is rejected.

III.    Ground Three: Ineffective Assistance of Counsel

Lastly, Petitioner claims that trial counsel was ineffective for failing to force strict enforcement of the plea agreement and failing to object to the alleged violations of that agreement.  ECF No. 1, p. 4.  However, because the court has found that the plea agreement was not violated, it follows that there was nothing to which counsel could object.  Moreover, Petitioner was questioned by the court regarding counsel's performance:

>   THE COURT:  Has Ms. Harvey answered all your questions and done everything on your behalf you've asked her to do in this case?
>
>   THE DEFENDANT:  Yes, she has.
>
>   THE COURT:  Are you satisfied with the legal services she's provided to you?
>
>   THE DEFENDANT:  Yes, I am.

ECF No. 9-2, pp. 9-10.

Petitioner has not demonstrated that counsel's performance fell below an objective standard of reasonableness.  *See Strickland*, 466 U.S. at 688.  Indeed, as seen above, he stated

that he was satisfied with her performance.   There can be no "reasonable argument" as to whether counsel satisfied *Strickland's* "deferential standard." *Harrington*, 562 U.S. at 105. Therefore, Petitioner has failed to satisfy the first prong of the *Strickland* standard.  *Strickland,* 466 U.S. at 687.  Although the court need not reach the second prong, a reading of the transcript makes clear that counsel's performance at the plea/sentencing hearing did not prejudice Petitioner in any way.  *Hill*, 474 U.S. at 59.   There is no evidence that Petitioner wished to withdraw his plea and proceed to trial.[22]   Accordingly, the court rejects Petitioner's final ground for relief.

## Conclusion

For the reasons stated herein, the court will deny and dismiss the Petition with prejudice. Additionally, a Certificate of Appealability is not warranted as it may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). The Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Because this court finds that there has been no substantial showing of the denial of a constitutional right, a Certificate of Appealability shall be denied.  *See* 28 U. S.C. § 2253(c)(2).

---

[22]    Although Petitioner now claims that he disagreed with counsel's statement that he "want[ed] to go forward today," ECF No. 9-2, p. 3; *see also* ECF No. 19, p. 2, he did not object when questioned by the judge regarding his understanding of the plea agreement during the hearing.  *Id.*, pp. 5-6.  Moreover, even if he disagreed with counsel's statement, there is no indication that he did not wish to go forward with the plea agreement.  In fact, the opposite is true:

THE COURT: How do you wish to proceed this morning, do you want to have a jury trial or do you want to waive that right?

THE DEFENDANT: I want to waive that right and proceed with the plea agreement.

ECF No. 9-2, p. 6.

Denial of a Certificate of Appealability in the district court does not preclude Petitioner from requesting a Certificate of Appealability from the appellate court.

A separate Order follows.

_  July 28, 2015  _                                    _____/s/_____
Date                                                        DEBORAH K. CHASANOW
                                                              United States District Judge